Carolyn Ann MARTIN, Appellant,

v.

Leon M. MARTIN, Appellee.

Court of Appeals of Kentucky.

Oct. 10, 1969.

J. T. Hatcher, Paul M. Lewis, Hatcher & Lewis, Elizabethtown, for appellant.

Harold K. Huddleston, Huddleston & Van Zant, Elizabethtown, for appellee.

REED, Judge.

The appellant, Carolyn Ann Martin, was granted an absolute divorce from her husband, the appellee, Leon M. Martin. She was granted custody of their three children: Beverly, age 7; Pamela, age 6; and Jeffery, age 3. The trial judge awarded Carolyn: "alimony in the sum of $500"; the further sum of $820 "as restoration of payments made by her on the real estate"; $150 a month for support of the children; and the household furniture. The trial court adjudged that Leon was the owner of the real estate held in the joint names of the parties, but impressed this property with a lien in favor of Carolyn to secure payment of the "cost of alimony and restoration awarded her"; it was also adjudged that Leon pay an indebtedness of approximately $446 which was secured by a security agreement on the furniture awarded to Carolyn. Carolyn asserts that these allowances to her were grossly inadequate. Leon filed a cross appeal, but in his brief has now abandoned it. He contends, however, that the allowances to his wife were more than adequate, and that the judgment of the trial court should be affirmed. We have concluded that Carolyn is entitled to periodic alimony, under the undisputed facts in this case; therefore, we reverse that portion of the judgment which determines the amount of alimony allowable to the wife.

The parties were married in 1959. Neither of them had any estate at the time of marriage and they have not accumulat-

ed any significant estate during marriage. Carolyn has an automobile which her father gave to her and Leon's father gave him an automobile after the parties separated. No value is placed upon the furniture.

The only asset about which there is any controversy is the real estate. It seems that during 1966 this couple wanted to build a home but didn't have funds for a down payment. Leon's father deeded to them, without any consideration whatever, about five acres of land so that they could obtain a loan of sufficient size to build a house and pay the construction cost. The house was constructed at a cost of $15,500 and a loan was obtained for that full amount. The balance on the loan at the time of the divorce was $16,132.66. The parties had made total payments during the life of the loan of $1,638.31, which were insufficient to cover the amount of interest accumulated during the period. The payments were supposed to be at the rate of $100 per month and Carolyn testified that she had made approximately one-half of the payments on the house. She is jointly obligated with Leon on this note and mortgage.

Carolyn introduced a properly qualified witness who testified that the fair market value of the house itself was $15,200 and that the fair market value of the land was $5,000. There actually appears to be no dispute concerning this value, and we accept as accurate the amount of $20,200 as representing the fair market value of the improved real property.

It is also undisputed that Carolyn, from her own funds, paid $500 on a debt created by Leon when it became necessary for him to refund that amount to a previous employer of his.

Carolyn works as a stenographer in a telephone office and has a take-home pay of $68 per week. At the time of the rendition of the judgment, Leon was unemployed and had been for several weeks while under treatment for alcoholism. Prior to this last period of unemployment, he had worked at a steel company and received a wage of approximately $80 per week. These reduced earnings were attributable to Leon's spasmodic work record as a result of his drinking. The evidence clearly establishes that Leon has actually earned in the recent past and is capable of earning about $600 per month.

Because of chronic bouts with alcoholism, Leon spent frequent weekends in jail. More tragic to relate, however, is that Leon made Carolyn's life unbearable. He was guilty of repeated sadistic acts of cruelty directed at her and the children. He was quite unmanageable by anyone, including his father, and severely beat Carolyn. He repeatedly frightened and beat the children with neither provocation nor excuse. After the separation, it appears that he went to live with his father who has given him an automobile and appears interested in rehabilitating him. The question is, nevertheless, who is going to rehabilitate the innocent victims of his desire to exercise adult privileges, but his refusal to accept adult responsibilities.

The trial judge allowed Carolyn $820 which represented the amount of payments which she made on the real estate from her separate funds. He further allowed her a lump sum of $500 "as alimony." This made a total allowance of $1,320 to her. If we regard the property as restorable to the husband as did the chancellor, then Carolyn received by way of alimony and restoration very slightly less than one-third of the equity in the real property so far as the record reveals. The real property must be regarded as either the joint property of Carolyn and Leon or property properly restorable to Leon. Apparently the trial court regarded it as properly restorable to Leon because Leon's father had given them the land. The point is, the real property could not be reduced in value to the extent of the value of the land being charged to neither of the parties to the action because manifestly the restoration statute does not apply to Leon's father. It may well be that since the land was a gift to both of the parties to the marriage, it

**704**

is properly restorable to the husband under these cicumstances, but the value of it must be regarded as his estate. See Jackson v. Jackson, Ky., 248 S.W.2d 411, as considered in Smith v. Smith, Ky., 436 S.W.2d 532. The chancellor neither adjudged that Leon save Carolyn harmless from liability on the note evidencing the loan on the real estate, nor did he adjudge Carolyn entitled to recover the $500 which she had paid on Leon's behalf. This hardly seems consistent with principles of restoration.

It strikes us that the most practical solution under the cicumstances is to let the determination of the chancellor stand so far as the restoration of property and his adjudication of lump sum awards are concerned, as well as those determinations concerning the personal property.

 We will not extend this opinion by an attempt to recite the various considerations that are presented in individual cases concerning the adequacy and inadequacy of awards for alimony and child support. We regard it sufficient to say that, under the evidence presented by this record, we are convinced that the determination made of Leon's responsibility for future support of this family unit is erroneous. The chancellor either abused his discretion or failed to exercise discretion vested in him to grant periodic alimony. The fact that Carolyn is now primarily responsible to rear three young children to adulthood on $150 a month is a significant consideration; another significant consideration is that Carolyn and her children were not given the right to live in the house, but will have to find other living quarters; the fact that Leon has an earning capacity of $600 per month and that his future prospects are by no means unpromising, if he will conduct himself as society has a right to expect in relation to his obligations to this family unit, is another relevant consideration. Periodic alimony is especially applicable where the accumulation of an estate is small or non-existent and the principal asset is future earning capacity.

Another feature of the allowance of periodic alimony, which makes it adaptable to this case, is that the trial judge retains control to increase it, lower it, or eliminate it, as conditions warrant. In our opinion, Carolyn should receive periodic alimony in this case in an amount to be fixed by the trial judge in an amount not less than $100 per month on the present showing, subject to the control of the trial court as future conditions may warrant. It should also be adjudged that Leon save Carolyn harmless from liability on the note evidencing the loan on the real estate; in all other respects the judgment remains undisturbed.

The judgment is reversed for further proceedings consistent herewith.

All concur.